UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
CSC HOLDINGS, INC.,

                                Plaintiff,

                                                                                  **REPORT AND**
               -against-                                                 **RECOMMENDATION**
                                                                                  04-CV-5435 (JS)(ARL)

JAY OLIVO,

                                Defendant.
-------------------------------------------------------------X

**LINDSAY, Magistrate Judge:**

       This matter was referred to the undersigned by District Judge Seybert for determination of whether a default should be issued against the defendant, Jay Olivo ("Olivo"), and, if so, the appropriate amount of damages to be awarded. By order dated May 3, 2005, the plaintiff, CSC Holdings, Inc., known as "Cablevision," was directed to serve and file papers in support of its claims by May 27, 2005. Cablevision has submitted a memorandum of law in support of its claim, the Affidavit of Donald Kempton ("Kempton"), Investigator for CSC Holdings, Inc., sworn to May 23, 2005, and the Affirmation of Shaun K. Hogan, Esq. in support of the plaintiff's application for attorney's fees. No papers in opposition were filed by the defendant, despite his having been given an opportunity to do so. Having considered the plaintiff's submissions, the undersigned recommends that a default judgment be entered and that the plaintiff be awarded $2,280 in statutory damages, and $1,686 in attorneys' fees, for a total award of $3,966.

**DISCUSSION**

Olivo's Default:

       On December 15, 2004, Cablevision commenced this action against the defendant Olivo alleging that the defendant unlawfully intercepted its telecommunication signal in violation of 47

U.S.C. §§ 605 and 553. Olivo was served with the summons and complaint on January 22, 2005 at his home located at 521 North Lewis Avenue, Lindenhurst, New York 11757, and thereafter a copy of the summons and complaint was mailed to the defendant by first class mail at the same address. *See* Clerk's Notation of Default. Olivo failed to answer or otherwise move with respect to the complaint.

Federal Rule of Civil Procedure 55 establishes a two step process regarding default judgments. First, the Clerk of the Court enters the party's default. Then, as here, a motion for entry of a judgment is made to the district court judge. On April 26, 2005, the plaintiff moved for a default judgment and, on April 29, 2005, the Clerk of the Court certified Olivo's default. *Id.* Olivo has not responded to the motion for a default judgment.

The Claims Against Olivo:

The complaint in this action seeks damages for the illegal interception of cable television programming signals under 47 U.S.C. §§553(a)(1) and 605(a) of the Cable Communications Policy Act. Those sections prohibit the unauthorized reception of cable television programming services. *See International Cablevision, Inc. v. Sykes,* 75 F.3d 123, 133 (2d Cir. 1996). Section 553, which applies to "unauthorized reception of cable services, provides that "[n]o person shall intercept or receive . . . any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." Section 605(a) applies to "radio transmission" and "communication by radio," and provides that "[n]o person not being authorized by sender shall intercept any radio communication and divulge or publish the . . . contents . . . of such intercepted communication to any person." Olivo violated both of these sections.

Cablevision Programming and Billing:

Cablevision offers cable television services to subscribers who request and pay for them. Kempton Aff. at ¶ 2. The programming consists of different tiers of cable television programming services, such as from "Basic," and "Family," with each step increasing the number of "premium" stations that the subscriber can receive, at a correspondingly higher monthly cost. Currently, the price of subscribing to the full range of premium services is approximately $80.00 per month. *Id*. That figure includes the price for Cablevision's Family and Basic service, which must be purchased to receive "premium" programming. *Id.* Cablevision subscribers may also elect to subscribe to one or more additional "premium" services such as "Pay Per View" programming, which enables a subscriber to purchase individual movies, sporting events or concerts for a per-event fee. *Id*. The fee for additional premium services range from $1.95 to $14.95 per month, per service, and the fee for pay-per view programming ranges from $3.95 to $54.95 per selection. *Id.*

Legitimate Cablevision subscribers receive their programming through a converter-decoder that allows reception of whatever level of programming the subscriber has opted to purchase. *Id.* at ¶ 3. To prevent subscribers from receiving programming services for which they have not paid, Cablevision encrypts or "scrambles" the signals for its services, so that when in a scrambled mode, programming services not purchased remain distorted and not viewable on the subscriber's television set. *Id.* Unauthorized interception of Cablevision's programming can be accomplished by using a "pirate" or modified converter-decoder. *Id*. at ¶ 4.

Cablevision's claims against the defendant arose following an investigation of a business known as Explorer Electronics ("Explorer"), located in Indiana. *Id.* at ¶ 5. Cablevision

suspected that Explorer was engaged in the sale and distribution of 'pirate' converter-decoder devices. *Id.* Cablevision obtained Explorer's business records during discovery in a civil action against Explorer in the Northern District of Indiana, Hammond Division. *Id.* at ¶ 6. The business records confirmed that Olivo had purchased a "pirate" descrambling device from Explorer on or about December 28, 2002. *Id.* at ¶ 6 and Ex. C.

The type of device purchased by Olivo has been tested and found capable of defeating the encryption technology used by Cablevision in Suffolk County, where Olivo lived, thus permitting access to all of Cablevision's cable television programming, including its premium and pay per view programming services, without authorization, in violation of 47 U.S.C. §§553(a)(1) and 605(a). *Id.* at ¶ 7. Indeed, the sole function of such unauthorized converter-decoders is to enable their users to receive unauthorized cable television programming without paying for it; they serve no lawful purpose. *See Cablevision Systems New York City Corp. v. Flores,* 2001 U.S. Dist. LEXIS 9351, at *7 (S.D.N.Y. July 6, 2001) (citing *Time Warner Cable of New York City v. Barbosa,* 2001 WL 118608 *3 (S.D.N.Y. Jan. 2, 2001)); see also Kempton Aff. at ¶ 8.

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.,* 973 F.2d 155, 158 (2d Cir.), *cert. Denied,* 506 U.S. 1080 (1993). As set forth above, the facts support a finding that Olivo violated both sections 553 and 605 of the Communications Act, and thus, the undersigned recommends that a default judgment be entered.

<u>Damages:</u>

Where a defendant has violated both sections 553 and 605, a plaintiff may recover

damages under one statute or the other, but not both. *See Sykes,* 75 F.3d at 129. Here, the plaintiff has opted to receive statutory, rather than actual, damages pursuant to 47 U.S.C. §605(e)(3)(C)(i)(II), which allows an award of statutory damages "for each violation of subsection (a) of this section involved in the action in a sum of not less than $1,000 or more than $10,000, as the court considers just." The statute also requires the court to "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." §605(e)(3)(B)(iii). The plaintiff seeks an award of $10,000.00 in statutory damages and $1,686.00 as reasonable costs and attorneys' fees.

Among the relevant criteria in setting a figure for statutory damages are "the amount of money saved by the violator and the revenues lost by the plaintiff." *Time Warner Cable of New York City v. Dockins,* 1998 U.S. Dist. LEXIS 22689, at *18 (S.D.N.Y. Sept. 4, 1998). Because the defendant has defaulted, it is impossible to determine the actual amounts gained by Olivo or lost by the plaintiff, and an estimate must be made. In this regard, the length of time that the descrambler was in use is significant.

The plaintiff alleges that, during the relevant time period, that is, from the date of purchase of the decoder on December 28, 2002 to the date the complaint was filed, December 15, 2004, Olivo resided at 521 North Lewis Avenue, Lindenhurst, New York 11757. Thus, for a period of approximately 24 months from December 28, 2002 to December 15, 2004, the defendant used a decoder to receive the highest level of Cablevision services and access to pay per view events, while paying only the Family rate. The court accepts the plaintiff's claim that

the benefit to the defendant at current rates[1] for the enhanced premium services was approximately $45.00 per month ($80.00 per month for all premium services minus Olivo's cost of $35.00 per month), and therefore, an award of $1,080.00 for the illicit usage of premium services must be considered in estimating the damages awards.

The benefit to the defendant from the unauthorized access to pay per view events is more difficult to estimate. In *Time Warner Cable of New York City v. Peluso,* CV 00-1539, Report and Recommendation (E.D.N.Y. Feb. 13, 2001) (Levy, M.J.), *adopted*, (Mar. 5, 2001) (Gershon, D.J.), the court assumed that the defendant had watched one quarter of the pay per view events a week, at a price of $5 per event, amounting to a value of $100 per month. *See also Cablevision Systems of New York City Corp. v. Ayala,* 2000 U.S. Dist LEXIS 9612, at *12-13 (S.D.N.Y. July 10, 2000) (finding $10,375 to be a reasonable amount for the pay per view selections defendant "might have viewed without making the requisite payment to Cablevision" for a period of 83 months, or approximately $125 per month). The court finds the damages awarded in *Peluso* to be excessive and recommends that $50 per month (an assumption that the defendant might have viewed 10 selections per month, at a price of $5 per event) be considered in estimating the damages associated with the defendant's illicit access to pay per view events for 24 months. Thus, an additional $1,200.00 must be considered in estimating the damages. The court therefore recommends an award of $2,280.00

This award is reasonable, based on the value of the services that the defendant had access

---

[1] The court will not engage in a detailed analysis of past rates and attempt to pro rate the difference. The defendant gave up the right to have the damages calculated with that level of precision when he defaulted. Moreover, the ultimate award of damages is based on an estimate of value, not an exact computation.

to without paying for them. Had the defendant appeared and contested the damages, it is possible that the damages award would have been less. The defendant, however, chose to default and the court must draw every inference against him. The need for deterrence of cable piracy also supports the award. The court in *Flores* noted that "[o]n a national scale, cable piracy results in revenue losses of approximately $5.1 billion, exclusive of pay-per-view theft." *Flores,* 2001 WL 761085 at *4. Given the magnitude of this problem, deterrence of future violations is of great importance, and damage awards should reflect that goal.

Costs and Attorneys' Fees:

The court also recommends that the plaintiff be awarded $187.00 in costs and $1,499.00 in attorneys' fees, pursuant to §605(e)(3)(B)(iii), for a total fees award of $1,686.00. The plaintiff has supported its request with the requisite documentation showing, for each attorney, the "date, the hours expended, and the nature of the work done," and the court finds it to be reasonable. *See New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1154 (2d Cir. 1983).

The plaintiff is directed to serve a copy of this Report and Recommendation on Mr. Olivo by certified mail, and to file proof of service with the court.

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a courtesy copy to the undersigned within 10 days of the date of service of this Report. Failure to file objections within this period waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York

June 21, 2005

                                          _____
                                          ARLENE ROSARIO LINDSAY
                                          United States Magistrate Judge